And now we have someone from Indiana here, and we have a fine Indiana District Court judge here. This is a special deal. I haven't heard you for a long time in the past. Indeed. Okay. Please, Mr. ... Did you say Danis? Is that correct? Danis. Thank you very much. Danis. Okay. Please proceed. May it please the Court, Glenn Danis for appellants and plaintiffs here. So there are, in this case, there are four bases for reversal. And I'd like to present them in the following order, unless the Court would like me to address them in a different order. One is that there's a minimum wage violation that was based on a failure to pay nonproductive time that the Court erred below on. Number two, there's a failure to pay off the clockwork, which is an independent claim. Number three, there is a wage statement claim that there were errors made as to. And four, there were business expense reimbursement claims where there were some errors made at trial. Counsel, I confess, I really wrestled with this case. It's a very close case. But let me just start by asking, you know about Oman versus Delta Airlines. It seems pretty clear that in that case, that employers and employees can contract whatever compensation scheme they want to, so long as the employees are paid at least a minimum wage. If I'm understanding that case correctly, why does J.B. Hunt's scheme not comply with Oman? Sure. Well, I'll address that in a couple of ways. Number one, Oman, in the case itself, only dealt with hourly employees and did not purport to deal with piece rate whatsoever. And in fact, I believe there's a footnote. I forget offhand which one number it is. But it says that specifically. And I believe Justice Liu in his concurrence also makes an issue about that. That said, the essence of the claim here is that the district court did not look at this plan as applied. It looked at the plan only on its face. Once the plan is applied, it's clear that there is not a minimum wage being paid for all hours worked. The reason why, and one very clear example that the district court never looked into, was at 6 ER 1178 through 1184. There's a discussion, which I think is very illuminating, about the fact that no matter how many hours someone works, they get paid the exact same. And the example that was given to the 30B6 witness was if someone worked 31— So I saw that argue, but I have trouble seeing why that proves it. Because let's say I was going to pay, I could call you Judge Smith, a billion dollars for this thing. And it was going to take six hours. And no matter how many hours he works, he's going to get a billion dollars. It's not going to change. But whatever those hours will be, the billion dollars will be divided by the hours, will be over minimum wage. So I just didn't see how the mere fact that that point that you're making is kind of the gotcha point that proves that it cannot be paying them at least minimum wage. Yeah, it's a gotcha point because of Gonzalez and because of California law and the way that it's developed, which says that no matter where, even if on average you were getting a billion dollars and you were getting a million dollars per hour, you still have to be paid for every hour as an individual unit under California law. This is based on the wage orders. It is different than federal law. It may be counterintuitive, but this is the way that California law has decided. Each hour is its own unit. So if you're making a million dollars an hour for the time that you're spent doing the piece rate work, but you're not making that money on, let's say, in between piece rate assignments, the waiting time, the other things, the traffic or whatever. Under California law, that time is compensable. Our point isn't that you can't have a piece rate system. You absolutely can have a piece rate system. Under 226.2, the requirement is that if you're going to have a piece rate system, you have to pay for nonproductive time. And there's absolutely no question here. You have to pay separately for nonproductive time? You have to pay separately if you have a piece rate system. So the piece rate would be one category and you divide that and you go, yeah, it's over minimum wage, so we're good. But then you could not put the nonproductive time in with the piece rate time in figuring out. Bingo. Correct. That is absolutely the way the law works. That is the Wright v. Resenberger case, which is a case that my colleagues on the other side didn't address at all in their brief, but we raised in our brief. This is Gonzales, which is a California from 2013 case. And really- So we would have to find, though, that there's nonproductive time for which there was no payment. Exactly. So, I mean, really, the way that the analysis works is once you agree that this is a piece rate system and that's why the other side argues so vociferously that it is not a piece rate system. Once you find that it is a piece rate system, they have to pay for nonproductive time. Excuse me, and there's no question that they don't. So then it gets to, is it a piece rate system? There's no question that they don't pay because they don't say there is. They also are saying there's no nonproductive time, right? Is that correct? They're agreeing that there is nonproductive time. Their 30B6 witness admitted that things like fueling, washing, pre- and post-shift paperwork, and safety meetings are not covered under the activity pay bonus. So it would only be paid if it were separately paid as hourly. Now, they say, well, it is separately paid as hourly. We pay, excuse me, we pay for all hours worked. That's not true, and that's why the district court, it was incumbent on the district court to take a look at the way that this works as applied. In our brief, we go through how this policy applies to Mr. Williams' pay. And the way it applies to Mr. Williams' pay is that his total compensation is equal only to his piece rate earnings. I get your point about Gonzalez. I get your point about Justice Liu's concurrence. But as you know, the district court took comfort in the, what I'll call, safe harbor rule of 226.2A7. Yes. What's your best argument that notwithstanding Gonzalez and Justice Liu, that the district court was wrong that this safe harbor rule, which seems to say, as long as you get the minimum wage, you're okay, doesn't fit? The safe harbor provision is for folks that have non-piece rate compensation schemes. And so what do you, on what do you rely for that understanding? Just the plain language of the statute. The plain language of the statute in 226.2A says that if you have a piece rate system, X applies, and you have to pay for non-productive time, you have to do certain things on the wage statements, X, Y, and Z. If you don't have one, and in fact you have a system that's part piece rate and part paying for everything else, then you can nestle under the safe harbor at 226.2A7. Our whole point is that the district court simply failed to look beyond the superficial aspects of their plan to see that they don't get it. You say superficial, but you're actually meaning like the terms of the plan, correct, that provide for a set hourly rate. And I know there's math that's involved at the back end, but doesn't the plan also provide if the math at the back end ends up in a negative, the employee gets paid the minimum wage or whatever above the minimum wage, according to the plan? You're absolutely correct. That's absolutely right. So the answer is that this applies, this entire argument applies only to employees who are getting the, you know, where the numerator of their activity bonus pay, where they're getting a quote-unquote bonus. For people where the denominator is larger, where their hours worked is larger than their quote-unquote bonus, they're not included in this claim. They only have minimum wage claims to the extent that there's a separate off-the-clock work claim, which there is, and there is a separate off-the-clock work claim, which is entirely distinct from this piece rate issue. I appreciate your analysis of that. As I look at the statute and look at the case law, I originally started out one way and then I went another way and went another way and went another way. Is this the kind of a case where we ought to certify this question to the California Supreme Court? It's an important question. Your Honor, I absolutely think that that would be the right way to go because there is no California appellate decision as of yet interpreting this new 2016 statute. So if the court has any question that it's not clear, the California Supreme Court should be weighing in in the first instance, and as you know, it has taken a number of cases from this court through that very procedure. They do take their time. They're busy too. But it is an important question. Like I said, I just back and forth and back and forth, and I can see arguments both ways. So it wouldn't hurt your feelings if that's what we did, right? Not at all. I absolutely understand because, frankly, this is very important, particularly for the trucking industry, which really this statute seems in many ways designed for. But, no, I think that it took me living with these issues quite a bit really to understand what was going on here and why the plan is nothing but a peace raid plan that doesn't fall under that safe harbor. I'd like to just address a couple of the other points. One of them would have to do with an entirely independent off-the-clock work claim. This claim is the district court found that there are two prongs for it. A, that there was off-the-clock work, and B, that the employer knew or should have known. It found that, yes, on one basis there was, in fact, off-the-clock work, or at least the jury could find that there was off-the-clock work. On the knowledge point or the constructive knowledge point, the court made an error. We raised three different reasons why the court was on actual or constructive notice. All of this is record evidence. One, that folks were told to show up 45 minutes before their shift. Number two, that they were told to clock in using the people net units on their trucks, which means that they can't clock in when they get to the site and pick up their paperwork. It means that they're instructed to do so on their truck, so it's automatically missing all of that pre-shift work. That's at 5 ER 1052. And number three, that there was GPS data that showed that the trucks were moved after the drivers were clocked out. That's at 7 ER 1698. And all three of these things showed that the employer, the J.B. Hunt, was on notice of there being at least some off-the-clock work. We cited cases for this. The RELOJ, R-E-L-O-J case, versus Government Employee Empire Insurance. The York versus Starbucks case. And these cases stand for the proposition that where there is, let's say, VPN tracking, it raises a tribal issue, in fact, as to the employer's knowledge. Or where managers were frequently requesting off-the-clock work, it raises a tribal issue of employer knowledge. So here we have the district court going halfway. Yes, there was some off-the-clock work, but it erred on the issue of constructive or actual knowledge. And then finally, just completely separately, there is an issue, there is at least a couple of issues regarding the wage statement claim. The most glaring and a pure legal issue is that the district court didn't understand that under 226A, for a PAGA violation for wage statements, there is no requirement to meet 226E, knowing and intentional. So if you have a PAGA wage statement violation, all you need to show is 226A, that there was a violation, that there was missing data on the face of the pay stub. There is no other part of the analysis. But in the case itself, though, as I recall, at page 59 of your brief, you indicated there was just one page in the wage statement. And yet later on, at 5ER 1097, it showed there's lots of additional paperwork that was provided. Yes. So I gather you're not claiming that you have already shown that there was a PAGA violation. Thank you, Your Honor. That's a separate issue. So there are two bases, two standalone wage statement claims. One of them is that they're missing total hours and that that goes along with there being some off-the-clock work. That has nothing to do with what page it's on. That's just that there is just missing time. And the district court agreed on that. It found that for the same reason that there was a jury issue on off-the-clock work, there's a jury issue on off-the-clock total hours missing on the face of the pay stub. That is it for a PAGA claim. That should have just been you get to the motion is denied. Now, for the non-PAGA claim, we have the 226A3 claim, based on the fact that certain information is missing that is required for a piece rate employee. They don't deny that it's only on a separate sheet. It's not on the pay stub. Whether or not this separate sheet qualifies for being on the statement itself is an issue that really is a fact issue. There's a case, Aguirre v. Genesis Logistics, a 2013 case, that rejected the idea that if an employer has additional documentation that's made available to an employee that would show them what their piece rate, the rate and the number of units and all of that, that that would be sufficient. It has to be on the face of the pay stub because these are folks who are getting their pay stub, and the whole point of California law in this, whether we agree with it or not, is that it's there for transparency so folks know if they're being paid properly. It must be on the pay stub. The other side doesn't disagree that it was on a separate sheet. The only question is how that sheet was given to the employee and whether or not that was in fact, and that's not in the briefing and it's not in the record. All they said in their brief was we included it in our document of production. It's right there at 7 ER 1655. Well, you know, it is in the document of production, but that says nothing about how the employee got it and whether it's on the pay stub. You want to save the balance of your time for a rebuttal? Yes, thank you very much, Your Honor. Thank you. All right, Mr. Hanson. Thank you. May it please the Court. My view of the record is much different than what opposing counsel's is. Let me start, first of all, with the pay plan that was used. No matter what you call it or what you continue to call it, that it's a piece rate plan, the plan itself specifically says you get an hourly rate for all hours worked. The employees required to clock in before they begin any work activities to clock out after they finish their last work activities. There should be no other time that they're working that isn't recorded. Now, one of the plaintiffs said I was told to come in early. I just want to be sure I understand. So do I understand you to be saying that with respect to piece work, that all of that is supposed to have been reported and all of that goes to their hourly wages? There should be no issue as long as they meet the minimum hourly payment. Is that right? That's 226.2A7, which says that if you're paying an hourly rate that's above the minimum wage, and J.B. Hunt's hourly rate was well above the minimum wage, it changed every time the minimum wage changed, and then you receive additional amounts based on your productivity, and we figure that based on take all the activity compensation, we subtract out what we've already paid on an hourly basis, and we add that to their pay so that they have an incentive to work hard. Your opposing counsel, if I understand him correctly, is making at least a couple of points. First of all, that all of the, if you will, off the book was not required. So, for example, like moving trucks or being there 45 minutes early, something like that. I gather you disagree with that. Secondly, I understand him to be saying that even if you include that, meaning the at-piece work, that sometimes, and this is my implication, sometimes you would be less than the minimum wage, but you get there by adding that in. What's your response to that? We don't do that, Your Honor. You don't do that, okay. We don't do that, and we gave some examples to the district court, which are in this record, that what we do is if a person doesn't earn activity-based pay to earn the bonus or the productivity bonus, they are still paid the hourly wage for each hour worked, and it shows up on the pay statements, and that was in the record. We showed examples of people who their eligible productivity bonus did not exceed their hourly pay for each hour worked. Now, the starting point is that we pay an hourly rate for each hour worked. We're not doing like in Gonzales. They were doing, you know, it's automotive mechanics, and they're doing it based on the field book of how long it takes to do the work, and you get paid for four hours even if it takes you three. They were borrowing from that activity-based pay to make up for hours that were worked that were less than the minimum wage. So you're saying that whether it's piecework or just regular work, all of the hours, piecework or otherwise, are being paid at at least the minimum wage. Is that right? Greater than the minimum wage, yes, Your Honor. We have no nonproductive time, and what 226.2 says is that if you have an hourly pay for each hour worked, you've complied with the statute under 4 of separately paying for nonproductive time because we don't have any nonproductive time. Now, that's your position. I'm just trying to make sure I understand where the disagreement here is. Their position is that, as I understand it, I didn't understand them to be disputing that you get, that if you took all of your productive time and your nonproductive time, which you say you have none of, but their position is if you took both of them together and you divided it by what people were paid, that they're exceeding minimum wage. I don't understand them to be disputing that. What they seem to be saying is that California law requires you to take the productive time and you pay whatever you pay for that, right? And then that gets put in one bucket, and then over here you have to take the nonproductive time and make sure that they are also being paid for the nonproductive time. You don't get to put the two together, and it's difficult because it seems like that's their argument, but if you're saying there's no nonproductive time, then it's difficult to figure out, you know, you're denying a factual predicate of their whole position. And so I'm trying to figure out how to resolve that, how to address that. The premise of their argument is wrong. If you look at the actual compensation policy, it's got an hourly rate, and it tells them that they're paid the hourly rate for each hour worked. They are required under the provisions that say hours worked, they are required to record all of their time from the time that before they, you know, at the time they begin work to the time that they end work, and all of those hours are compensated at the hourly rate specified in the pay plan. What they're saying is that if we pay an activity bonus, then we violate the statute, and that doesn't make any sense to me. That turns everything on its head. It's not logical to say that if we pay an hourly rate plus we pay an activity-based bonus, that when you add the activity-based bonus that we then violate the statute because we don't pay for nonproductive time. Well, it's like any hourly employee. There is no nonproductive time because they're being paid on an hourly basis for each of those hours from the time they come to work to the time they leave. There is no time for them to perform, and they never, you know, William said that he came in early to do work off the clock. That's how they characterize it. He never testified to that. He was told that before he began going out on the road, there are certain things drivers need to do in order to lawfully take their truck out on the road. As a DOT-regulated driver, they've got to get their paperwork for the day. They do that in the office. What they do when they come into the yard at the target facility where this was located is they walk right by their truck. They get in it. They can log in, and then they go in the office and do all the other things that they're required, like get their paperwork, anything that's going on that the managers may need to tell them, and then they go out to the truck and they do the pre-trip inspection, which is required under the Federal Motor Carrier Safety Regulations. They then get in their truck. They go find their trailer, hook onto their trailer, and you've got to have that time before they actually start driving. And your position is that they should have logged in, and that's part of productive time under your – they should have logged in right when he walked on the site 45 minutes early. And I think their position is he sounded like he factually maybe didn't do that, and then that takes us, I guess, to the question of whether or not Hunt knew or should have known that that was going on. Am I understanding correctly? That is correct. We had no knowledge. If he was doing that, we had no knowledge of that. I'm trying to think of why somebody like him wouldn't do that, but I could imagine if he's pretty confident he's going to get – if he's pretty confident he's going to make more than the minimum wage per hour, it sort of does take away a little bit of your incentive to log in. It's just extra work for him to get up in the cab and log in, and he's probably thinking to himself, he doesn't get paid any more for doing that if he just logs in later when he gets in the truck. Because the amount he makes divided by his hours is significantly higher than the minimum wage, so he's rarely ever going to get – if ever going to get the other. Is that what's going on? Am I understanding that correctly? I don't understand his motivation of why he wouldn't do that because he's told in company policy log in before you begin any work. That's how we keep record of the hours worked. We give them a tablet. I understand. I used to work – I used to do this kind of stuff. I was trying to make humans to act consistent with their incentives, right? And so that's – I'm guessing the reason he wouldn't have, if he didn't, the reason he wouldn't have logged in is because it doesn't really actually affect his bottom line if he logs in 45 minutes earlier typically. He never testified. There is no evidence in the record that he had a motivation not to log in. He had to go based on what's in the record, and he never said that he worked off the clock. What he said is he was told by his manager that he had to arrive 45 minutes before he actually began the delivery of his load for the day. And you're saying that's just irrelevant as to whether or not when he actually started working. Your view would be if he had to do that, he would have started working 45 minutes before he drove off the lot. I'm sorry. Ask that one more time. Your position would be, yeah, that's fine, but that's not – then he would have just – he would have started working 45 minutes before he drove off the lot. That's your – that's how you would interpret that testimony and say there's nothing wrong with that. We could say he needs to show up two hours earlier, and if he shows up two hours earlier, he starts work two hours earlier. Right. In other words, under company policy, if he showed up 45 minutes in advance or two hours, he just logs in and he gets paid whatever his hourly rate is. The claim by the person that my colleague is referring to is something you didn't know about. It's certainly not your policy. As far as you're concerned, whether it's – we call it piecework or anything else, they get paid for it, they log in for it, they get the full benefit of that. It's all above minimum wage, and you're entitled to the safety valve. Right. I mean, under California law, each hour has to be separately compensated at a rate above the minimum wage. And so Hunt put into a policy that said we're going to pay an hourly rate that's greater than the minimum wage, and we're not going to take away the incentive that drivers have to earn extra money by being productive. They get the opportunity to earn that through the productivity bonus that's paid to the drivers. But you can't call it an activity-based pay plan only by simply repeating that statement. That's what they did at the district court level. That's what they've done on appeal is they mischaracterize what the pay plan is. If you look at the wording of the pay plan. Can I get a response? I'm trying to understand this. So as I understand, one of the concrete examples that I think you mentioned today is a clock off or clock out of this people net or whatever it's called, and then we know that the truck moved after that because GPS data from the truck, that the truck moved. So the thought being that he clocked off and then he got up and he went back. Somebody went back and moved their truck. Maybe not Williams, but we just know that. And therefore, you knew or should have known that people are clocking off and then still working. And what is your response to J.B. Hunt? Two aspects of that. One is, does that show that some of this, what he's characterizing as nonproductive time or whatever you want to call it, but that he's doing something that we could agree does work? And B, should J.B. Hunt have known that that was going on? And I don't know, send a memo out saying stop clocking off until after you moved your truck. I remember no evidence in the record that he ever, that Mr. Williams ever moved his truck or Mr. Contreras moved his truck after clocking out. I have never seen that in the evidence. So you don't know what he's referring to then when he's talking about that, about trucks being moved, GPS data showing trucks being moved after people clocked out. Right. He said he was told to arrive 45 minutes, he gave three reasons. Told to arrive 45 minutes early, but that's because there are things that you've got to do in order to hook up your truck, in order to take the load to where you're going to deliver it. They clock into the OBC that he said they did that afterwards, but that's, there was no evidence that J.B. Hunt knew that they were clocking in after they started work or that they were clocking out and then continuing to work. And it would be contrary to J.B. Hunt's policy, right? Policy. That's correct, Your Honor. And then the thing about the GPS and the truck moving, the only way we would know that it was one of the plaintiffs, Contreras, Williams, or Kline, is if they logged into the OBC and put their driver code in. In, you know, the OBC can be, the truck can be used by any driver and you record... You're saying maybe somebody else got in the truck, you know, they clock out, leave, or do whatever, and then maybe somebody else moves the truck? Is that... Well, it's possible that there was a mechanic that moved it. It's possible that somebody else moved it, you know, while they were already clocked in, because the driver, sometimes the truck might be in the way for... Or I suppose it's possible, I mean, it's not impossible for them to have clocked out and then gotten back in and moved their own truck, but your answer, I assume, would be they're not supposed to do that. They shouldn't have clocked out until after they moved the truck. Correct. If they were doing it as a work activity, they should have clocked back into their truck. Are you claiming that these are contrived situations that really didn't occur? What's your position? If we, you know, there's no evidence that J.B. Hunt had knowledge that any of that was going on, so I'll put that first. If I was going to try the case, that's exactly what I would say, is that I'm making up something to get around what J.B. Hunt has as a policy and as actual facts of what the drivers did, and that is clock in. There is no evidence that J.B. Hunt knew that anybody performed any work off the clock. That's the bottom line. And there's nothing in the trial record to that effect either, right? That's correct, and that's what the district court, in entering summary judgment, said, you've got to show that you actually worked off the clock, and then number two, you've got to show that the employer knew or should have known that you were working off the clock. Now, in the cases that they rely on, there were cases in which the supervisors or managers in those cases were telling people to work off the clock. There is no evidence that we told them to work off the clock. The only evidence is Williams, who said he was told to come in before he began taking out his load for delivery. He was told to come in 45 minutes early so that he could do the things that are necessary in order to be able to get in the truck and leave to get to the stores that he was delivering to on time. Was there any evidence in that 45-minute period that he knew he should have clocked in during that time period? Any evidence that he knew he should have? In other words, your company policy is he should have clocked in right away. He should have been compensated for the 45 minutes. Are you saying that the record doesn't show that he knew that or that he should have known that? He knew that because the pay plan that we have requires that it be signed by each of the employees. Williams, Contreras, and Klein all signed these pay plans that require them to record all hours worked. So just so I'm clear, was it his testimony that he arrived 45 minutes early but did not clock in? No, his only statement was he arrived 45 minutes before he actually took his load out for delivery. It was not that he was working off the clock. I was told to arrive 45 minutes before I took my load out for delivery. But he didn't just say that someone in J.B. Hunt said, you're supposed to be here 45 minutes early but don't clock in? There's no evidence of that, Your Honor. That never occurred. And it sounds like what you're telling us is if the cases they're pointing to are all cases where some supervisor was sort of telling people to do something off the clock, then there just really isn't California case law that would help inform if somebody is working off the clock, they haven't been told to work off the clock but they are just doing it, where that line is that where the employer should know, I mean assume if they know, but where the employer should know to where they would be liable. I mean in some instance if like you just knew that everybody is working off the clock all the time and people are coming up to you, hey, I just worked off the clock, you know, you think that at some point they would meet that second factor but we don't really have a lot of information on that because we don't have cases that present those kind of facts. Those facts aren't in this case. I know you're saying they're not in this case but it sounds like in addition to that, we don't really even have case law that tells us where that line is that an employer should have known, not the known part but that the employer, people were working off the clock because here the district court judge assumed or found at least there could be a jury question as to that they had worked off the clock but said it's not a jury question as to whether or not they could have known but I'm trying to figure out what, is there much guidance on what counts as could have known? I mean we deal with the new or should have known in all kinds of circumstances. I don't think that that's necessarily a legally unique standard that we deal with on a daily basis almost, you know, but I don't, you know, in this case the district court said they never put in any evidence of why J.B. Hunt should have known that they were working off the clock. The court said... It's not so much that there's some evidence but it was, it would never meet that test. It's just there's no evidence. There's no evidence, right. I want to ask you one final question as you may know. Our court finds about California law usually only when courts of appeal or the California Supreme Court in this case have made it clear enough that we have a good idea what they would be doing. Given Gonzalez, given Justice Liu's comment in his concurrence and so on, do you believe that we have enough California case law and direction that our court can, if you will, opine what the safety valve means here or should we send this question certified to the California Supreme Court? I think it is unnecessary to send it to the California Supreme Court because the statute itself, 226.2A7, as you mentioned earlier, Your Honor, the employer who in addition to paying any piece rate compensation pays an hourly rate of at least the applicable minimum wage for all hours worked shall be deemed in compliance with Paragraph 4. Paragraph 4 is the one that says you should be compensated for other nonproductive time at an hourly rate that is not less than the applicable minimum wage. So if we're paying an hourly rate for all hours worked, employers are put into this quandary when using a piece rate. As you probably know, there are a lot of trucking cases that have gone down. In fact, J.B. Hunt was one that got caught in that that ended up settling in 2018. That's why they put the pay plan in effect to say we're not going to get caught in that where we have piece rate pay and not paying for the pre-trip, post-trip inspections and whatnot. So from your perspective, you fully comply with the safety valve. There's nothing to certify the California Supreme Court, and we can decide that. Is that correct? That's correct. I think you can do away with this case quickly. Okay. Questions by my colleagues? All right. Thank you very much. Thank you, Your Honor. Mr. – you said Danis? Danis. Danis. I apologize. Anyway, Mr. Danis had a little bit of rebuttal time. Okay. Thank you very much. I'm just going to try and be efficient here and hit a couple points quickly. Number one, to Judge Van Dyke's point, is there any case law that says that it can be something less than a manager telling you you must work off the clock or you must show up early? Reboe v. Farmers Insurance Group, 2013, U.S. District, Lexis, 100810. It's a July 17, 2013, CD-Cal case. It said that where the supervisors instructed employees to arrive early to perform functions necessary to being ready for work at their designated shift time, that was sufficient to create a factual issue for trial. So that is one such case. But taking that point, though, your opposing counsel says that under the pay plan, anybody who did arrive early and the supervisor told them to arrive early should clock in. What's your response to that? Our response to that is twofold. Number one, that they are told to clock in on their PeopleNet units that are on their trucks. And, in fact, the other side was saying that this is one of the great reasons they provide all the stuff you need. You shouldn't even need your own phone to clock in. You can do it on the truck. The truck is physically located apart from the office where they get their paperwork. A second point to the point about, well, there's nothing regarding Mr. Williams himself and any evidence that he worked off the clock. On page 7, ER 1698, they said, the question was, so you're saying that you do this while you're logged off duty? Yes. And how would the company be able to tell whether that ever occurred? Answer from Williams. I think so because they scan. They have a GPS system on the trailer. Target does or J.B. Hunt? No, J.B. Hunt. They have GPS systems on the trailer. Yes. But that kind of goes to my question because even the case you pointed out is a situation where I assume people are being you talked about a shift. You used the word shift in that. And people are being paid from a certain time or expected to be there a certain time. Obviously, people are expected to be there earlier here. I mean, the argument would just be that their shift starts 45 minutes before their truck leaves. Like, implicit in yours is the concept that the shift starts the moment your truck drives off the lot. But I don't think we're not truckers, but that's not even intuitive to me. Like, it would start sometime before that. And so I'm trying to figure out, like, it seems quite a difference to say, well, they could have went in and they could have taken the GPS data and they could have linked that up with their and figured out that people were working off the clock like they're some sort of detectives or something, versus a situation where, in the case you're talking about, where people actually are told, get here before you clock in, essentially, before your shift. There's quite a difference between that. Well, when they tell them to clock in early, I'm sorry, when they tell them to arrive early, and then they provide a way for them to clock in that they know isn't being used from facts on the ground, that should be enough for a jury question. And so where's the record evidence of that, that they know it's not being used? Well, the record evidence is at least from William saying that they have a GPS on his truck. He said the trailer, I thought you read. Isn't that what he said, it's on the trailer? I'm sorry. He said the GPS, but it's not contested that the people in that unit is in the truck. But the GPS unit that you'd be supposedly cross-referencing is not actually on the truck if it's on the trailer. The trailer's moved around. I believe it's in the truck, Your Honor. I think he may have misspoken here, but there's plenty of evidence in the case that the people in that unit is a tablet that's not in the trailers that are switched out, but rather in the cab. In order to be successful on your claim, do you have to prove that J.B. Hunt knew or should have known that your three plaintiffs were working off the clock, that they knew it and they didn't say they should sign it? Yes, for the off-the-clock separate claim, for the separate off-the-clock claim, not for the unpaid nonproductive time claim. Why is that? Because unpaid nonproductive time is not an off-the-clock claim. It's not about employer knowledge. It's simply about the way that they set up their plan. But, again, my understanding is, and your opposing counsel has said this, all employees are supposed to clock in whenever they're doing any work for J.B. Hunt, period. If that's right, how can your argument succeed? The issue about being clocked in or out has nothing to do with the first claim about the way that their pay plan is set up. We'd have to accept it's a piece rate claim versus an hourly claim with a bonus.  And if I could just say, Your Honor, I think that the California Supreme Court should weigh in on it because really what the issue is here is that they add and then subtract all the hourly work. They're saying the whole thing that makes this plan kosher is that we add people get paid for their time. They add it and then they take it right away in the denominator. If this were a situation where they added your hourly time and then just on top of it was gravy of a productive bonus, we would have no claim on that. We don't deny that. It's all about the fact that they then subtract it all out and all you're left with is piece rate. If you're then left just with piece rate, they must pay for nonproductive time, which they don't. No, they – okay. Never mind. That's okay. That's all right. I think we could talk about this for a long time. Very interesting labor case. Thank you both for your fine arguments. We appreciate it very much. The case of William v. J.B. Hunt Transport is submitted and the court stands adjourned for the day. Thank you. Thank you very much, Your Honors. I'll rise. This court for this session stands adjourned.
judges: SMITH, VANDYKE, Stinson